[Cite as *Literal v. Dept. of Rehab. & Corr.*, 2016-Ohio-8536.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Timothy Literal, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 16AP-242 |
| v. | : | (Ct. of Cl. No. 2015-00501) |
| Department of Rehabilitation and Correction, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on December 30, 2016

**On brief:** *The Tyack Law Firm Co., LPA*, and *Thomas M. Tyack*, for appellant. **Argued:** *Thomas M. Tyack*.

**On brief:** *Michael DeWine*, Attorney General, *Eric A. Walker*, and *Christopher L. Bagi*, for appellee.

APPEAL from the Court of Claims of Ohio

SADLER, J.

{¶ 1} Plaintiff-appellant, Timothy Literal, appeals from a judgment of the Court of Claims of Ohio in favor of defendant-appellant, Department of Rehabilitation and Correction ("DRC"). For the reasons that follow, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On May 22, 2013, appellant was serving a prison sentence for aggravated robbery at appellee's Oakwood Correctional Institution. On May 22, 2013, an inmate by the name of Michael Sholler assaulted appellant, breaking appellant's nose and elbow and

causing a brain injury that required hospitalization. On May 18, 2015, appellant filed a complaint against DRC in the Court of Claims alleging that DRC "knew or should have known Sholler posed a substantial and serious risk to Plaintiff and other inmates * * * due to his known history and propensity to engage in violent behavior towards others and the behavior Sholler was exhibiting prior to his attack upon Plaintiff." (Compl. at ¶ 18.) The complaint further alleges that DRC's negligence in failing to keep Sholler confined to his cell, pursuant to its own rules and the orders of its Rules Infraction Board ("RIB"), "directly and proximately caused Plaintiff to be viciously attacked by Sholler." (Compl. at ¶ 24.)

{¶ 3} Appellant testified about the assault in his deposition. According to appellant, he was housed in a cell on the second floor of unit West 2 at the time of the assault, a unit used for inmates in protective control ("PC"). Appellant estimated that there were approximately 70 or 80 inmates housed in the PC unit. Appellant recalled that inmate Sholler arrived at West 2 about three months before the assault. Sholler occupied a cell three or four cells up the hallway from appellant's cell. Though appellant came to know Sholler as "Mike" and had seen him in the hallways and in the chow hall, he had little contact with Sholler and did not know Sholler personally. (Appellant's dep. at 23.) Appellant testified that on the day of the assault, a correction officer ("C.O.") called count time at approximately 10:30 a.m., as was the custom. According to appellant, all inmates are to be in their cells during count time which typically lasts from 10:30 a.m. to 11:30 a.m. The only exceptions are the inmate porters who perform cleaning work in the common areas of the cell block during count time.

{¶ 4} Appellant testified that he was working as a porter that day performing cleaning duties throughout the unit. Appellant acknowledged that on occasion he provided chemical cleaners to other inmates in the unit for use in their cells, but he did not recall Sholler asking him for chemicals on the day of the assault. Appellant testified that as he walked past Sholler's cell, Sholler stepped out of his cell and into the hall saying "hey, Literal." (Dep. at 41.) Appellant recalled that as soon as he looked up, Sholler punched him. The next thing appellant remembered was waking up in the prison infirmary.

{¶ 5}   DRC video surveillance equipment captured Sholler's assault on appellant. Appellant viewed the videotaped surveillance footage as he testified in his deposition, and he acknowledged that the video refreshed his recollection of the assault.  According to appellant, the video shows him leaving the day room and walking up the hallway toward Sholler's cell.  Appellant is shown carrying a bottle of cleaning fluid and handing it to Sholler before walking back toward the day room.  The videotape recorded the time at 10:52:29.  The video next shows Sholler walking toward the day room where he says something to appellant.  Appellant testified that he could not remember what Sholler said to him, but in a statement appellant gave to a state trooper on June 11, 2013, appellant recalled that Sholler had said "hey, Timmy let me holler at you."  (Dep. at 47.)  At 10:54:56, the video shows Sholler punching appellant in the head and appellant falling to the floor.

{¶ 6}   Appellant testified that he never met or knew Sholler before Sholler moved into the cell block.  In the three months Sholler occupied the nearby cell, appellant never had any problems with Sholler, never received a threat of any kind from Sholler, and had no fear of Sholler.  Appellant testified that if he had any concerns about his safety around Sholler, he would have reported his concerns to a C.O. and would avoid getting "within arm's reach" of Sholler.  (Dep. at 41.)  According to appellant, the video confirms the fact he displayed no concern that Sholler had left his cell in the moments before the assault and no fear as Sholler approached him just seconds before the attack.  Appellant testified that he never learned Sholler's reason for assaulting him, and he still has no idea why Sholler attacked him on May 22, 2013.

{¶ 7}   On November 24, 2015, DRC filed a motion for summary judgment, pursuant to Civ.R. 56(B), arguing that it was entitled to judgment as a matter of law because appellant's deposition testimony proves that DRC did not have prior notice that Sholler would assault appellant.  Appellant opposed the motion arguing that Sholler's documented history of fights with, and assaults on, other inmates combined with Sholler's other rule violations permit the inference that DRC knew or should have known that Sholler would assault him.  In opposition to the motion for summary judgment, appellant submitted incident reports and RIB rulings dating back to July 2010 evidencing Sholler's prior violence towards other inmates.  The incident reports also document the misconduct

that prompted the RIB to temporarily confine Sholler to his cell for a period of ten days, up to and including the day of the assault on appellant.

{¶ 8} On March 1, 2015, the Court of Claims granted DRC's motion for summary judgment and entered judgment in favor of DRC. Appellant timely appealed to this court from the judgment of the Court of Claims.

## II. ASSIGNMENT OF ERROR

{¶ 9} Appellant assigns the following error:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE DEPARTMENT OF REHABILITATION AND CORRECTIONS [sic] ON THE BASIS THAT THE DEPARTMENT OF REHABILITATION AND CORRECTIONS [sic] DID NOT HAVE ACTUAL KNOWLEDGE THAT INMATE SHOLLER INTENDED TO ATTACK MR. LITERAL, BASED ON SOME INTERACTION BETWEEN THEM FINDING THAT GIVEN THE CIRCUMSTANCES AND SHOLLER'S HISTORY OF VIOLENCE DID NOT PUT THE DEPARTMENT OF REHABILITATION ON "CONSTRUCTIVE NOTICE" THAT HE WAS A DANGER OR HARM TO THE PLAINTIFF OR OTHER PRISONERS IN THE INSTITUTION.

## III. STANDARD OF REVIEW

{¶ 10} We review a summary judgment motion de novo. *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994), citing *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711 (4th Dist.1993). When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992); *Brown* at 711. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

{¶ 11} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 12} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). " 'The requirement that a party seeking summary judgment disclose the basis for the motion and support the motion with evidence is well founded in Ohio law.' " *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997), quoting *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115 (1988). Thus, the moving party may not fulfill its initial burden simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. *Dresher* at 293. Rather, the moving party must support its motion by pointing to some evidence of the type set forth in Civ.R. 56(C), which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*

{¶ 13} If the moving party has satisfied its initial burden under Civ.R. 56(C), then "the nonmoving party * * * has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id.*

## IV. LEGAL ANALYSIS

{¶ 14} In appellant's sole assignment of error, appellant argues that the Court of Claims erred when it held that DRC was entitled to judgment as a matter of law because appellant failed to produce evidence that would permit a reasonable inference that DRC had prior notice that Sholler would assault him. We disagree.

{¶ 15} To prevail on a negligence claim, appellant must establish that (1) DRC owed him a duty, (2) DRC breached that duty, and (3) DRC's breach proximately caused his injuries. *Briscoe v. Dept. of Rehab. & Corr.*, 10th Dist. No. 02AP-1109, 2003-Ohio-

3533, ¶ 20, citing *Macklin v. Dept. of Rehab. & Corr.*, 10th Dist. No. 01AP-293, 2002-Ohio-5069. "In the context of a custodial relationship between the state and its inmates, the state owes a common-law duty of reasonable care and protection from unreasonable risks of physical harm." *McElfresh v. Dept. of Rehab. & Corr.*, 10th Dist. No. 04AP-177, 2004-Ohio-5545, ¶ 16, citing *Woods v. Dept. of Rehab. & Corr.*, 130 Ohio App.3d 742, 744-45 (10th Dist.1998). "Reasonable care is that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances." *McElfresh* at ¶ 16. The state's duty of reasonable care does not render it an insurer of inmate safety. *Williams v. S. Ohio Corr. Facility*, 67 Ohio App.3d 517, 526 (10th Dist.1990), citing *Clemets v. Heston*, 20 Ohio App.3d 132 (6th Dist.1985). "However, 'once [the state] becomes aware of a dangerous condition[,] it must take reasonable care to prevent injury to the inmate.' " *Watson v. Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-606, 2012-Ohio-1017, ¶ 8, quoting *Briscoe* at ¶ 20, citing *Williams v. Dept. of Rehab. & Corr.*, 61 Ohio Misc.2d 699 (1991).

{¶ 16} The law of this district with regard to DRC liability for an assault by one inmate on another has been established in a number of decisions of this court including *Baker v. Dept. of Rehab. & Corr.*, 28 Ohio App.3d 99 (10th Dist.1986); *Watson*; and *Allen v. Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-619, 2015-Ohio-383. Here, appellant alleges that DRC was negligent in failing to prevent the assault by Sholler. In *Watson*, this court reiterated the legal standard applicable to such claims as follows:

> The law is well-settled in Ohio that ODRC is not liable for the intentional attack of one inmate by another, unless ODRC has adequate notice of an impending assault. *Mitchell v. Ohio Dept. of Rehab. & Corr.*, 107 Ohio App.3d 231, 235, 668 N.E.2d 538 (10th Dist.1995), citing *Baker v. State, Dept. of Rehab. & Corr.*, 28 Ohio App.3d 99, 28 Ohio B. 142, 502 N.E.2d 261 (10th Dist.1986). Notice may be actual or constructive, the distinction being the manner in which the notice is obtained rather than the amount of information obtained. *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-1052, 2010 Ohio 4736, ¶ 14. Actual notice exists where the information was personally communicated to or received by the party. *Id.* "Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice." *Id.*, citing *In Re*

> *Estate of Fahle*, 90 Ohio App. 195, 197, 105 N.E.2d 429 (6th Dist.1950).

*Id.* at ¶ 9. *See also Allen* at ¶ 18.

{¶ 17} In *Watson*, this court declined to infer that the inmate/assailant was a danger to his cell mate and other inmates based on erratic behavior such as "boxing" his cell mate's locker and crouching in a defensive posture. *Id.* at ¶ 10. In affirming a judgment of the Court of Claims in favor of DRC, this court found that the behavior of the inmate/assailant " 'does not translate into actual or constructive notice that [he] posed a risk of violence or that his attack on [the injured inmate] was forthcoming.' " *Id.* at ¶ 15, quoting *Hughes v. Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-1052, 2010-Ohio-4736, ¶ 15. This court reasoned that the inmate/assailant in *Watson* had "never exhibited violent tendencies or assaultive behavior toward [the victim] or any other inmate during his incarceration at [the prison]. Further, while [the assailant's] actions prior to the assault were certainly bizarre, he did not threaten or act violently toward [the victim] or any other inmate." *Id.* at ¶ 19.

{¶ 18} In *Allen*, the complaint alleged that the plaintiff sustained injuries when his cell mate, Decost, assaulted him by "punching [him] in the back (kidney)." *Id.* at ¶ 2. DRC filed a motion for summary judgment arguing that plaintiff could not show that DRC had notice of an impending assault on plaintiff. The Court of Claims granted the motion for summary judgment, and the plaintiff appealed to this court.

{¶ 19} In affirming the Court of Claims, this court noted that the plaintiff's affidavit did not contain sufficient facts on which it may be reasonably inferred that DRC had constructive notice that an assault on appellant was imminent. We stated that "[w]hile appellant avers that Decost threatened other inmates, he does not claim that Decost ever made good on those threats. The fact that DRC knew that Decost was a violent offender who had made threats of violence toward other inmates is insufficient, standing alone, to establish constructive notice to DRC of an imminent attack on appellant." *Id.* at ¶ 22.

{¶ 20} In *Baker*, this court reviewed an inmate's claim against DRC for damages arising from an assault by another inmate. In that case, the plaintiff was assaulted by other inmates shortly after plaintiff had made some "vague statements" to prison guards about his need to be relocated. *Id.* at 100. Plaintiff had also been slapped in the face by

one of his assailants on the day of the assault. *Id.* In affirming the trial court's judgment in favor of DRC, this court held that DRC could not be held liable to the plaintiff for failing to prevent the assault because C.O.s did not have adequate notice of an impending assault. *Id.* In so holding, the court stressed the fact that the plaintiff had never requested protective custody or directly expressed his fears of an impending assault to any of DRC's employees. *Id.*

{¶ 21} There is no claim in this case that DRC had actual notice of an impending assault by Sholler on appellant or any other inmate in West 2. There is no evidence that Sholler made any such threats and no evidence that any inmate in the PC unit had informed DRC that they feared an assault by Sholler. Appellant's deposition testimony establishes that he had no reason to fear an assault by Sholler. The only reasonable conclusion to draw from appellant's deposition testimony is that the attack by Sholler on May 22, 2013 was unprovoked and unexpected. Under such circumstances, DRC cannot be liable to appellant for failing to prevent that assault by Sholler.

{¶ 22} Nonetheless, appellant argues that Sholler's institutional record of violence against other inmates and the more recent rule violations that resulted in a cell isolation penalty are sufficient to create a triable issue of constructive notice on the part of DRC. Sholler's disciplinary record shows that he was found guilty of fighting with his cell mate in 2010 and with another inmate later in the same year. Appellant produced evidence that Sholler assaulted an inmate in 2010 because Sholler allegedly believed the other inmate had molested his daughter. The institutional records indicate that Sholler assaulted a second inmate in early 2012, but the record does not reveal the reason for the second assault. Following each incident, the RIB imposed progressively stiffer sanctions against Sholler and in each case the RIB recommended Sholler's separation from the other inmate involved.

{¶ 23} The institutional record also evidences rule violations by Sholler that are unrelated to violence against other inmates. For example, the institutional record establishes that Sholler was on cell isolation at the time of the assault, which means that he is allowed out of his cell only for one or two hours per day. The RIB imposed the penalty because a C.O. had observed Sholler giving a tattoo to another inmate and

because C.O.s found homemade alcohol when they searched Sholler's cell.[1]  A few days before the assault on appellant, the RIB imposed 20 days of bed restriction after finding Sholler guilty of "jerking away" from a C.O.  (May 20, 2013 Hearing Officer Report at 1.) Sholler was still serving the cell isolation and bed restriction penalties when he assaulted appellant.

{¶ 24} In *Kordelewski v. Dept. of Rehab. & Corr.*, 10th Dist. No. 00AP-1109 (June 21, 2001), the issue for this court was whether the Court of Claims erred by entering judgment in favor of DRC on an inmate's claim that DRC was negligent in permitting him to be assaulted by another inmate.  In *Kordelewski*, both the inmate assailant and the appellant were housed in the PC unit.  The assailant punched appellant in the jaw as appellant reentered the dorm after recreation.  The evidence did not reveal any prior threats against appellant by the assailant or any disputes between the two inmates in the four to six months they had been housed in the same dorm.  Thus, appellant conceded that DRC did not have actual notice that the assailant would attack him.  Appellant in *Kordelewski* predicated his allegation of constructive notice exclusively on the assailant's institutional record of violence against other inmates.  The institutional record included "an assaultive past history that includes five (5) assaults on staff, numerous assaults/fights with inmates, and has raped two inmates." *Id.*

{¶ 25} In affirming judgment in favor of DRC, this court determined that such evidence did not permit a finding that DRC had constructive notice of an impending assault on appellant.  In so ruling, we observed:

> Appellant did not introduce evidence at trial in the present case that Reeves' institutional record of violence was, for an inmate in protective custody, so out of the ordinary as to warrant measures beyond those already taken by ODRC staff. While the assault on appellant appears to have triggered further disciplinary action against Reeves, which seems entirely appropriate, we cannot from the record state the manifest weight of the evidence called for additional segregation of inmate Reeves prior to the assault. We accordingly find ODRC cannot be found liable for the attack solely on the basis of Reeves' institutional history of violent incidents.

---

[1] Sholler's cell mate reported that the alcohol was his, not Sholler's.

*Id.*

{¶ 26} Sholler's institutional record does not reveal the same degree of violence displayed by the inmate/assailant in *Kordelewski*. There is no evidence that Sholler assaulted DRC staff and no evidence that Sholler raped any other inmate. Though Sholler's institutional record establishes a history of violent incidents with other inmates, the last of which occurred more than one year before the assault on appellant, such a history, standing alone, does not permit an inference that DRC either knew or should have known Sholler would attack appellant. Given the undisputed evidence that Sholler had no prior disputes with appellant and had made no threats against appellant or any other inmate in the PC unit, there is nothing in the record to create an issue of fact regarding constructive notice of an impending assault on appellant by Sholler.

{¶ 27} Appellant's argument in regard to notice in this case rests almost exclusively on this court's recent 2-1 decision in *Frash v. Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-932, 2016-Ohio-360. In *Frash*, inmate Groves attacked and killed inmate Frash. Frash worked as a dog handler at the Ross Correctional Institution and was walking a dog out in the recreation yard when he was approached by Groves. Groves and Frash had words when Groves threatened to kill the dog. "[S]hortly after" this incident, Groves attacked and killed Frash in the day room by repeatedly stabbing him with a shank made from a pair of upholstery shears. *Id.* at ¶ 9.

{¶ 28} In *Frash,* the majority determined that the following facts were sufficient to put DRC on notice that Groves would assault another inmate, notwithstanding the fact that DRC lacked information about exactly whom Groves would assault: (1) Grove's regular and repetitive record of stabbing violence against other inmates (incidents in 1984, 1988, 1994, 1996, and 1999 before being placed on level 5 security) leading up to this incident in 2010 (which was 4 years after being transferred to level 3 security in 2006); (2) the fact that these incidents were a direct result of Groves' permanent mental condition as a sufferer of paranoid schizophrenia; (3) the fact that the only guard on duty nearby was an inexperienced relief officer who had only worked at the prison for two weeks; (4) did not know the numbers to call in the event of an emergency; and (5) thought he was guarding level 2 prisoners (less dangerous) when he was really guarding level 3 prisoners (more dangerous). *Id.* at ¶ 2, 16-19.

{¶ 29} Appellant argues that, pursuant to *Frash*, it is no longer necessary for appellant to produce evidence that DRC was aware that Sholler made threats of violence against him in order for appellant to create an issue of fact regarding constructive notice. According to appellant, under *Frash,* evidence that Sholler has a history of violence against other inmates, standing alone, is sufficient to create an issue of fact whether DRC knew or should have known of an impending assault on appellant by Sholler. We do not believe that *Frash* stands for such a proposition.

{¶ 30} Following the release of the majority decision in *Frash*, DRC filed a motion for en banc consideration arguing that the decision was in conflict with several other prior decisions of this court, including *Watson* and *Allen*. In *Frash v. Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-932, 2016-Ohio-3134 ("*Frash II*"), this court denied DRC's motion. In so doing, the majority explained that the decision in *Frash* did not change the law of this district with regard to constructive notice:

> We did not hold in *Frash* that it is never (or even not generally) necessary to have notice of against whom an attack is impending. The law is that in order to be liable, ODRC must have had notice, actual or constructive, of an impending attack. *See e.g.*, *Metcalf v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 01AP-292, 2002-Ohio-5082, ¶ 11. Whether ODRC had or did not have notice is a question that depends on all the factual circumstances involved, only one of which is whether ODRC had information about exactly whom would be attacked.
>
> * * *
>
> In short, *Frash* does not change the law that, as we have observed in past cases, it would often be unfair to say that ODRC had notice of an attack when they did not know who would be attacked.

*Frash II* at ¶ 11, 13.

{¶ 31} We find that the circumstances presented here surrounding Sholler's assault on appellant are materially different from those addressed by this court in *Frash* and that a different result is required under the particular facts of this case. Here, both Sholler and appellant were housed in the PC unit at the time of the assault, a unit which by appellant's own admission is supposed to be relatively trouble free. Sholler made no threats of

violence against appellant or any other inmate in the PC unit. Sholler had not exhibited any violent behavior for more than one year and none since he had been moved to the PC unit. Sholler and appellant had lived just three or four cells apart for a period of three months before the assault, during which time they had very little interaction and no disputes. As of the date of his deposition in this case, appellant still had no idea why Sholler assaulted him. Under these circumstances, it is not reasonable to find that DRC should have known that Sholler would attack appellant. In our opinion, appellant's evidence fails to create an issue of fact regarding DRC's notice of an impending attack by Sholler on appellant. Thus, DRC cannot be liable to appellant in negligence for failing to take steps to prevent the assault.

{¶ 32} Appellant argues that even if the evidence does not support a finding that DRC knew or should have known that Sholler would attack appellant, given Sholler's institutional history of violence against other inmates, DRC should have known that an attack by Sholler on another inmate in the PC unit was imminent. Appellant claims that DRC breached a duty of care it owed to appellant by failing to segregate Sholler from the other inmates in the PC unit. We disagree.

{¶ 33} In his deposition, appellant acknowledged the inherent dangers of prison life:

> Q. Did you ever come to learn or have an understanding as to why Mr. Sholler was incarcerated?
>
> A. None of my business.
>
> * * *
>
> Q. And you had no reason to believe whether he was a dangerous or violent inmate, is that correct?
>
> A. No. I mean I think everybody in prison can be subject to violence, danger.

(Appellant's Dep. at 66-67.)

{¶ 34} Appellant also acknowledged that he was less concerned about violence among the inmates residing in the PC unit:

Q. Paint the picture for us in terms of PC, is it basically because you are all in Protective Custody is it fairly low key, is it quiet, do you not argue?

A. It's supposed to be.

Q. Okay

* * *

A. Most generally it's supposed to be quiet, that's why it's called Protective Control, there's not supposed to be no trouble. But --

Q. So, before Mr. Sholler assaulted you in, on May 22, 2013, and I'm taking it that because you didn't know much about him and you said that you spoke, you didn't speak to him that often that you had no reason to be concerned that he could harm you in any way, is that correct?

A. No, sir.

(Dep. at 26.)

{¶ 35} In light of appellant's deposition testimony, we find that appellant has not presented evidence to create a genuine issue of material fact that Sholler's prison misconduct put ODRC on constructive notice of an impending attack by Sholler.

{¶ 36} To the extent that appellant argues that DRC violated its count-time policy and RIB rulings by failing to keep Sholler in his cell at the time of the assault, we note that appellant's assignment of error raises only the issue of notice. Moreover, given our ruling that the evidence does not permit a reasonable inference that DRC had notice that Sholler would assault another inmate, DRC cannot be liable to appellant for failing to keep Sholler in his cell, as a matter of law.

{¶ 37} Based on the foregoing, we find that appellant failed to produce evidence permitting a reasonable inference that DRC had prior notice that Sholler would assault appellant or any other inmate in the PC unit. Thus, DRC cannot be liable to appellant for failing to prevent that assault by Sholler. Accordingly, we hold that the Court of Claims did not err when it determined that DRC was entitled to judgment as a matter of law as to appellant's negligence claim. Appellant's sole assignment of error is overruled.

## V. CONCLUSION

{¶ 38} Having overruled appellant's sole assignment of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

DORRIAN, P.J., concurs.
BRUNNER, J., dissents.

BRUNNER, J., dissenting.

{¶ 39} I respectfully dissent from the decision of the majority, because I am uncomfortable with the direction that the majority's decision takes the law post-*Frash I* and *II* concerning attacks by state prison inmates on one another and how liability for those attacks by the Ohio Department of Rehabilitation and Correction ("ODRC") to those in its custody is established by law. *See Frash v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-932, 2016-Ohio-360 ("*Frash I*"); *Frash v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-932, 2016-Ohio-3134 ("*Frash II*"). In *Frash I*, we emphasized that ODRC's duty to protect one inmate from attack by another depended on the foreseeability of the attack. We stated:

> [T]he question of whether ODRC had a duty to protect M.W. Frash and can be held to have proximately caused his injury through negligence in protecting him from the intentional act of Groves, hinges on whether ODRC can be held to have reasonably foreseen the injury, that is, to have had "adequate notice of an impending attack." *Metcalf* [*v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 01AP-292, 2002-Ohio-5082] at ¶ 11; *Mussivand v. David*, 45 Ohio St.3d 314, 321, 544 N.E.2d 265 (1989) ("in order to establish proximate cause, foreseeability must be found"); *Strother v. Hutchinson*, 67 Ohio St.2d 282, 287, 423 N.E.2d 467 (1981) ("a reasonable foreseeability of injury is considered an element of proximate cause").
>
> Further, *Elam* [*v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-714, 2010-Ohio-1225], which separates the consideration of notice and proximate cause, can be further distinguished, because that case concerned an inmate with no history of violence toward other inmates, and it was on that basis we concluded ODRC lacked notice of an impending attack (because the injury was not foreseeable). *Id.* at ¶ 8, 10

(noting that the trial court found there was "no evidence that [the intentional tortfeasor inmate] had ever before exhibited violence toward another inmate"). The case now under review is therefore factually distinct in that Groves holds an extensive history of violence toward other inmates.

*Frash I* at ¶ 12-13.  When one inmate attacks another inmate, "actionable negligence arises only where prison officials had adequate notice of an impending attack." *Metcalf v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 01AP-292, 2002-Ohio-5082, ¶ 11.  Notice is established by evidence.  *Hill v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-265, 2012-Ohio-5304, ¶ 13.  And this notice may be actual or constructive.  *Metcalf* at ¶ 11; *Frash I* at ¶ 8.

{¶ 40} The question of ODRC's notice of Sholler's impending attack is one of fact and depends on evidence.  Sholler did have a history of attacking other inmates and not following the rules.  In Literal's situation, there is evidence that ODRC did not enforce its rule in requiring Sholler to remain confined for the entire period covered by institutional rule and during which the attack occurred.  Sholler was supposed to remain in his cell for a one-hour-long period of time.  He did not and attacked Literal in the hallway during that period.  In *Frash II,* we distinguished *Kordelewski v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 00AP-1109 (June 21, 2001)*,* stating, "because ODRC had acted appropriately, 'ODRC cannot be found liable for the attack *solely* on the basis of [the attacker's] institutional history of violent incidents.'"  (Emphasis sic.)  *Frash II* at ¶ 13, quoting *Kordelewski*.  The evidence Literal offered on summary judgment raises genuine issues of fact as to whether ODRC acted properly with regard to Sholler and Literal.

{¶ 41} And by applying *Kordelewski* to Literal's case we create more problems than we resolve.  First, *Kordelewski* was resolved by a trial and not by summary judgment.  The question at issue was manifest weight of the evidence.  *Kordelewski.* Second, in *Kordelewski* the only claim regarding ODRC rules was that they were not adequate, not that they were not followed.  *Id.*  By applying *Kordelewski* and in essence determining that a failure to follow rules is not negligence or that evidence of this particular failure in Literal's case is by degree not negligent, we are determining facts as a matter of law.  This is neither appropriate for us nor for the Ohio Court of Claims on summary judgment.  It is a question for the trier of fact.

{¶ 42} This same analysis applies to the nature of ODRC's constructive notice of the impending attack by Sholler, specifically, whether that constructive notice is of a potential attack or a potential attack on Literal.  By applying *Kordelewski* when determining whether constructive notice should be of a simple, potential attack or of an attack on a specific person, we are again parsing by degree a question of fact that should be decided by the trier of fact and not on summary judgment or by an appellate court reviewing that judgment.  *See Frash II* at ¶ 13, entire paragraph.

{¶ 43} But most disconcerting and underlying these concerns is the legislatively created environment of the Court of Claims that denies a jury trial in civil actions against the state.  R.C. 2743.11 ("No claimant in the court of claims shall be entitled to have his civil action against the state determined by a trial by jury.").  *See also* R.C. 2743.03(C)(1) ("A civil action against the state shall be heard and determined by a single judge.").

{¶ 44} When we apply Civ.R. 56 and well-established case law interpreting it to the review of summary judgment decisions by the Court of Claims, our affirmance of summary judgment in Literal's case allows for the creation of law by adjudging factual degrees—such as whether ODRC acted appropriately in following or not following its own rules or whether a degree of particularized notice was sufficient to ODRC of an impending attack.  These matters are subject to evidence.  Literal has offered evidence on summary judgment that, according to Civ.R. 56(C) and cases such as *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64 (1978), and *Dresher v. Burt,* 75 Ohio St.3d 280, 292 (1996), present genuine issues for trial.

{¶ 45} For an inmate or his or her counsel who undertakes a petition to the Court of Claims for redress for injuries suffered after a lapse in care according to established regulatory ODRC policy (such as permitting an inmate with a history of violence and history of disobeying rules to be unconfined during a rule-required confinement period), future litigation is likely, at best, a mystifying crapshoot.  Affirming the Court of Claims' summary judgment and applying *Kordelewski* subjects future litigants to case law that will be subject to change based on the particularized view of a trial judge or appellate court panel on matters that would ordinarily be questions of fact but are treated as questions of law.

{¶ 46} The Ohio statute excising jury trials from civil actions in the Court of Claims has established this propensity and made these cases not just problematic but bordering on unconstitutional. And the reality of this situation is that, while we as a reviewing court could and should reverse the decision of the Court of Claims on genuine material factual issues, the trier of fact remains by statute the same individual who has granted summary judgment and will be required to hold a trial and hear the evidence on which he or she has already formed and issued an opinion. Despite the length of time reversing summary judgment would add to this and other inmate attack cases before the Court of Claims, I believe it improper for us to parse case-by-case, on summary judgment review, what degree of facts make the law.

{¶ 47} The Ohio General Assembly's determination that no jury trials in civil actions are to be had against the state should not cause us to treat the issues relating to negligence in civil cases against the state any differently than we would any other cases involving negligence, including when injuries are received within a state prison system that owes at least a common-law duty of care to those who are in its custody. *Franks v. Ohio Dept. of Rehab. & Corr.*, 195 Ohio App.3d 114, 2011-Ohio-2048 (10th Dist.); *Frash I* at ¶ 8. The evidence in Literal's case relating to ODRC's failure to abide by a rule-established duty of care and relating to constructive notice of an impending assault create questions of fact. Literal's case should be decided at a trial and not on summary judgment, just as *Kordelewski* was. This is consistent with our established law on summary judgment. Despite the shortcomings of the statutory structure of the Court of Claims, Literal should receive his day in court.

{¶ 48} For these reasons, I respectfully dissent and would reverse the summary judgment of the Court of Claims.

_____