[Cite as *Reid v. Ohio Depart. of Rehab. & Corr.*, 2018-Ohio-3124.]

| | |
|---|---|
| KELIAH REID | Case No. 2016-00602JD |
| Plaintiff | Magistrate Gary Peterson |
| v. | DECISION OF THE MAGISTRATE |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff was at all times relevant an inmate in the custody and control of defendant, the Ohio Department of Rehabilitation and Correction (ODRC), at the Southern Ohio Correctional Facility (SOCF). Plaintiff brings this action claiming that defendant was negligent in failing to prevent an attack upon him by Joshua Varney, another inmate. The case proceeded to trial on the issues of liability and damages.

{¶2} At trial, plaintiff testified that he is currently incarcerated at the Lebanon Correctional Institution (LeCI), although on August 27, 2015, he was incarcerated at SOCF. Plaintiff related that in the morning of August 27, 2015, he, along with the other inmates of his unit, waited in the bullpen for the door to open so they could proceed to chow. Plaintiff stated that as the door opened, he motioned for the other inmates to exit before he did and noticed that a few inmates lingered in the bullpen.

{¶3} Plaintiff testified that he subsequently felt someone punch him in the mouth. Plaintiff stated that he immediately began defending himself from the attack. A video of the attack was played for the court and plaintiff identified the people on the video. Plaintiff explained that he simply reacted for his own safety and did not know at that time that he was being stabbed with a shank made from glass. Plaintiff testified that corrections officers thereafter deployed pepper spray to stop the attack. Plaintiff stated that he later learned that he was stabbed. Plaintiff identified several photos that were taken shortly after the attack.

{¶4} Plaintiff testified that he was thereafter transported to the infirmary and then to a hospital for treatment. Plaintiff stated that he had cuts to the back of his head, left side of his lip, a puncture in his cheek, and a cut on his temple. Plaintiff recalled that he was spitting glass out of his mouth as well. Plaintiff provided that his wounds were cleaned, that glass was removed from his face, and that he received stitches in two locations. Plaintiff was provided Ultram for pain control and a mouthwash that he used for about two weeks following the attack.

{¶5} Plaintiff testified that he experienced pain for several days following the attack and that he was unable to eat. Plaintiff described an inability to use his hand and an inability to sleep as other consequences of the attack. Plaintiff asserted that he did not feel safe when he returned to SOCF and no longer wanted to go to chow or wait in the bullpen with other inmates. Plaintiff stated that the stiches were removed two weeks after the attack. Plaintiff testified that as of the date of the trial, his wounds have yet to heal, that he still experiences pain where there is scarring, and that he has difficulty eating hot or cold foods.

{¶6} Plaintiff acknowledged that he knew his attacker, Joshua Varney, and that the two had interacted prior to this incident. Plaintiff recalled that the night before the attack, Varney was passing out laundry in the cellblock and asked plaintiff for some food. Plaintiff offered him two packets of ramen noodle soup. Plaintiff conceded that the attack was a surprise to him and that prior to the attack he did not fear Varney. Plaintiff further acknowledged that prior to the attack, he did not ever report to staff members that he feared for his safety.

{¶7} Chris Abel testified that he has been employed at SOCF since 2000 and that he is currently the maintenance superintendent, a position he has held since April 2017; prior to that, Abel held positions as a plumber and has worked on air quality of the HVAC system. Abel stated that he now supervises the day-to-day maintenance and orders necessary materials. Abel explained that when materials are ordered, he

prepares a request for purchase to obtain quotes and then submits the document to the business office. Abel further explained that the form, which is now maintained electronically, includes the quantity of material to be purchased and the pricing. The form also has the name of the vendor, shipping address, and the name of the person who approved the purchase. Abel stated that he learns that a request is approved when the materials arrive at the warehouse. Regarding glass windows, Abel stated that SOCF has both tempered or safety glass and glass that is not tempered, although he acknowledged that he has never replaced the glass of a cell window at SOCF.

{¶8} Nancy Behn testified that she is currently employed as the business administrator at SOCF. Behn explained that her duties include, among other things, making purchases and maintaining the budget at SOCF. Behn stated that she has been in that position for nearly three years and that Denise Gray previously occupied the position; Behn reported directly to Gray from the late 1990s until her retirement in 2015.

{¶9} Regarding the process for making purchases, Behn explained that the department wishing to purchase materials will send her a request for purchase, bids are obtained, and if approved, the materials are purchased. Behn added that if the purchase price exceeds $25,000, then SOCF must ask for a release and permit from individuals in Columbus. Behn stated that if the purchase price exceeds $50,000, then the Controlling Board must approve the purchase.

{¶10} Behn testified that capital improvement requests are submitted biannually and include a list of repairs that are needed at SOCF. Behn identified Plaintiff's Exhibits 8-1 and 8-2 as two such capital improvement plan documents; 8-2 was a request made in 2017. Behn added that the request in 8-2 is for Kane screening, which is a screen that locks and is placed over the window and hinges so that someone cannot access the glass.

{¶11} Regarding capital improvement projects, Behn explained that the departments collectively compile a list of repairs at SOCF, which is then submitted electronically to Columbus. Behn provided that Columbus reviews the list and will approve it or deny it depending on the level of funding available. Behn stated that she has made the last several capital improvement requests. Behn testified that after a project is approved, a capital assessment meeting (CAM) is held with the project manager and officials from SOCF who project the cost, identify vendors, and plan for the project. Behn stated that she has attended such a meeting, although she maintained that Plaintiff's Exhibit 9 was not from a CAM. Behn testified that Plaintiff's Exhibit 9 was a meeting held internally at SOCF. Behn explained that the SOCF team planned out the last set of capital improvements that were submitted, attempting to identify the needed repairs. Behn cautioned, however, that she cannot recall a request for window improvements for a capital improvement project that has been approved prior to 2015.

{¶12} Behn identified Plaintiff's Exhibit 11 as a purchasing document that has been submitted to a vendor. The document is dated January 5, 2006 and provides for the purchase of gray tint-tempered glass for cell window replacements. It is signed by Edwin Voorhies, who Behn identified as the former warden at SOCF. Behn cautioned that just because a purchase order is approved, it does not mean that the vendor satisfied the order. Behn conceded that because of a change that occurred in 2007 regarding the storing of electronic documents, she would have no way of knowing whether the vendor identified in Plaintiff's Exhibit 11 satisfied the purchase order.

{¶13} Behn identified Plaintiff's Exhibit 12, which is a Request for Release and Permit. Behn explained that the amount listed is $36,000 and that SOCF was required to ask for a release and permit for the tempered glass sought to be purchased. The document is dated December 12, 2005. Behn added that the document is marked approved by the Department of Administrative Services in Columbus.

{¶14} Behn identified Plaintiff's Exhibit 13, which is a Request to Purchase. The document is dated December 14, 2005, and the request is for 8,000 units of tint-tempered glass for cell window replacements. The cost is listed as $36,000. Behn identified Gordon Bullion, a former maintenance superintendent, as the person who submitted the request.

{¶15} David Warren testified that he is employed as a major at SOCF and has held that position for the previous 12 years. Warren stated that as a major, he is the chief of security for SOCF. Warren explained that he writes orders and directives regarding security and supervises the corrections officers, lieutenants, and captains at SOCF. Warren stated that SOCF is designated as a level 4 and a level 5 security classification, meaning the inmates are considered maximum security, or the highest security classification. Regarding Varney's attack on plaintiff, Warren stated that he is responsible for ensuring the safety of inmates and staff following such an incident. Warren added that he also ensures that any such incident is properly documented.

{¶16} Warren testified that once there is a report of broken glass in a window of a cell, the maintenance department is notified and the inmate is moved to another cell until the pane of glass is replaced. Warren stated that the maintenance department is notified by a work order that may either be directly submitted to the department or may be submitted through his office depending on the circumstances. Warren acknowledged that broken glass from a cell window is a safety and security risk in the prison.

{¶17} Warren testified that in 2006, there was a project of changing the glass in the cell windows. Warren explained that money was available at that time and that the windows were old, causing energy efficiency concerns. Warren added that many of the windows had missing caulking and that there were also issues with loose panes of glass. Warren acknowledged that there was also an incident where inmate Elam was killed by another inmate who used a weapon made of glass from a window. Warren

testified that as a result of all those issues, it was decided to move forward with changing the glass panes to a shatter-proof type safety glass. Warren explained that shatterproof means that when the glass breaks, it breaks into many small pieces rather than large chunks like regular glass. Warren stated that the glass used by Varney was regular glass as opposed to the shatter-proof kind.

{¶18} Warren testified that he did not know when the glass was received to replace the windows and stated that out of 12 population blocks, eight of them have had the cell windows replaced with safety glass. Warren added that he does not know why the windows were not replaced in the remaining blocks and stated that there is no funding currently for window replacement.

{¶19} "To establish negligence, a plaintiff must show the existence of a duty, a breach of that duty, and injury resulting proximately therefrom." *Taylor v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-1156, 2012-Ohio-4792, ¶ 15. "In the context of a custodial relationship between the state and its prisoners, the state owes a common-law duty of reasonable care and protection from unreasonable risks." *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-787, 2013-Ohio-5106, ¶ 8. "The state, however, is not an insurer of inmate safety and owes the duty of ordinary care only to inmates who are foreseeably at risk." *Franks v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-442, 2013-Ohio-1519, ¶ 17. "Reasonable care is that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances, and includes the duty to exercise reasonable care to prevent an inmate from being injured by a dangerous condition about which the state knows or should know." *McElfresh v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 04AP-177, 2004-Ohio-5545, ¶ 16.

{¶20} "The law is well-settled in Ohio that ODRC is not liable for the intentional attack of one inmate by another, unless ODRC has adequate notice of an impending assault." *Watson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-606,

2012-Ohio-1017, ¶ 9, citing *Mitchell v. Ohio Dept. of Rehab. & Corr.*, 107 Ohio App.3d 231, 235 (10th Dist.1995), citing *Baker v. State, Dept. of Rehab. & Corr.*, 28 Ohio App.3d 99 (10th Dist.1986); *Literal v. Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 16AP-242, 2016-Ohio-8536, ¶ 16; *see also Frash v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 14AP-932, 2016-Ohio-3134, ¶ 11, (regarding an inmate-on-inmate attack, "[t]he law is that in order to be liable, ODRC must have had notice, actual or constructive, of an impending attack.").

{¶21} "Notice may be actual or constructive, the distinction being the manner in which the notice is obtained rather than the amount of information obtained." *Lucero v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-288, 2011-Ohio-6388, ¶ 18. "Whenever the trier of fact is entitled to find from competent evidence that information was personally communicated to or received by the party, the notice is actual. Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice." *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-1052, 2010-Ohio-4736, ¶ 14.

{¶22} Upon review of the evidence presented at trial, the magistrate finds that plaintiff failed to prove his claim by a preponderance of the evidence. The magistrate further finds that on August 27, 2015, inmate Joshua Varney attacked plaintiff at SOCF, causing serious injuries. Varney created a weapon out of glass from a cell window and used that weapon to attack plaintiff. The attack occurred in the bullpen where plaintiff and several other inmates waited to be released to proceed to breakfast.

{¶23} The greater weight of the evidence establishes that defendant did not have notice, actual or constructive, to be liable for the injuries that plaintiff sustained. There is no evidence that Varney threatened to harm plaintiff, much less that plaintiff or anyone else told prison staff that plaintiff was in danger. Indeed, plaintiff acknowledged that he was surprised by the attack and that before the attack, he had no reason to fear Varney.

{¶24} There is no evidence that Varney suffered from mental illness or had a history of violence against inmates such that it could be concluded that defendant had constructive notice of an impending attack. Plaintiff presented evidence of one previous attack at SOCF, where an inmate formed a weapon out of glass from a cell window. However, it was shown that such an attack occurred approximately ten years before the incident giving rise to this claim and there is no evidence of similar instances of attacks being carried out by inmates using glass from cell windows. Accordingly, it cannot be said that knowing of one attack approximately ten years before is sufficient evidence to support the conclusion that defendant had constructive notice of an impending attack on plaintiff.

{¶25} Additionally, while plaintiff presented evidence that other cell windows had broken, it was not shown that glass from the windows was frequently used by inmates to fashion weapons such that it could be concluded that defendant knew or should have known that an attack on plaintiff was impending. Furthermore, there is no evidence that defendant knew or should have known that glass from Varney's cell window was missing. Therefore, the magistrate concludes that plaintiff failed to establish that defendant had constructive notice of an impending attack.

{¶26} Plaintiff argues in its post-trial briefing as follows:

{¶27} "Although *Literal* articulates the appropriate standard for many inmate-on-inmate assault cases, it does not control every case involving an attack by one inmate upon another. Specifically, *Literal* does not apply where, as here, liability is premised on ODRC's unreasonable and untimely implementation of its discretionary decision to remedy an unsafe prison condition: SOCF's dangerous cell windows, which ODRC knew could be broken and made into deadly weapons." Plaintiff's Response to Defendant's Post-Trial Brief, Page 1.

{¶28} However, after reviewing previous cases involving inmate-on-inmate attacks, the Tenth District Court of Appeals expressly stated in *Literal* that "[t]he law is

that in order to be liable, ODRC must have had notice, actual or constructive of an impending attack." *Literal* at ¶ 30.

{¶29} Nevertheless, assuming that defendant could be liable, under the facts of this case, for an "unreasonable and untimely implementation" of its decision to replace the glass in the cell windows with shatter resistant glass, plaintiff failed to show that defendant was negligent in such implementation. The Ohio Department of Transportation (ODOT) has previously been found to be liable for failing to timely implement a policy mandating protective fencing for all existing Ohio bridges that met predetermined scoring criteria. *Semadeni v. Ohio Dept. of Transp.*, 75 Ohio St.3d 128 (1996). Pietro Semadeni was killed when a chunk of concrete crashed through the windshield of his automobile and struck him in the head. *Id.* The concrete was either dropped or thrown by an unidentified person or persons from an overpass bridge. *Id.* It was determined that ODOT was negligent in failing to implement the policy and that its negligence was the proximate cause of Semadeni's death. *Id.*

{¶30} Unlike *Semadeni*, here, plaintiff points to no policy enacted by ODRC mandating the replacement of cell windows at SOCF. The magistrate recognizes that following the death of inmate Elam, defendant purchased glass to replace cell windows at SOCF. However, it was not established that defendant intended to replace all the cell windows at SOCF or that ODRC enacted a policy of replacing glass windows with shatterproof glass. Rather, it appears that only some of the cell windows were replaced at that time. Furthermore, it was not established why defendant only replaced a portion of the windows and not others. Moreover, it was not established when the project commenced or when it terminated. In short, the parameters of the project to replace at least some of the windows was not established.

{¶31} Based on the foregoing, the magistrate finds that plaintiff failed to prove his claim by a preponderance of the evidence. Accordingly, judgment is recommended in favor of defendant.

{¶32} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

GARY PETERSON
Magistrate

**Filed July 11, 2018**
**Sent to S.C. Reporter 8/7/18**