[Cite as *Frash v. Ohio Dept. of Rehab. & Corr.*, 2016-Ohio-3134.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Mark J. Frash, Administrator of the Estate of Mark Wayne Frash, Deceased, | : | |
| | : | |
| Plaintiff-Appellant, | : | No. 14AP-932 |
| | | (Ct. of Cl. No. 2011-04941) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Department of Rehabilitation and Correction, | : | |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

---

D E C I S I O N

Rendered on May 24, 2016

---

**On brief:** *Swope and Swope, Attorneys at Law*, and *Richard F. Swope*, for appellant.

**On brief:** *Michael DeWine*, Attorney General, and *Eric A. Walker*, for appellee.

---

ON APPLICATION FOR EN BANC CONSIDERATION

BRUNNER, J.

## I. INTRODUCTION

{¶ 1} Defendant-appellee, Ohio Department of Rehabilitation and Correction, ("ODRC") has filed an application for en banc consideration of a decision we released on February 2, 2016, reversing a decision of the Court of Claims of Ohio and remanding with instructions. S*ee Frash v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-932, 2016-Ohio-360. Plaintiff-appellant, Mark J. Frash, as administrator for the estate of Mark W. Frash, ("Estate") has responded in opposition.

No. 14AP-932

## II. STANDARD

{¶ 2} The Ohio Rules of Appellate Procedure explain the circumstances under which en banc consideration should be accorded:

> Upon a determination that two or more decisions of the court on which they sit are in conflict, a majority of the en banc court may order that an appeal or other proceeding be considered en banc. * * * Consideration en banc is not favored and will not be ordered unless necessary to secure or maintain uniformity of decisions within the district on an issue that is dispositive in the case in which the application is filed.

App.R. 26(A)(2)(a). The Local Rules of the Tenth District Court of Appeals also prescribe a preliminary procedure whereby "[a]n application for en banc consideration * * * shall initially be submitted to the three-judge panel that issued the more recent of the two decisions alleged to be in conflict" to determine if the application shall be submitted to the en banc court. Loc.R. 15 of the Tenth District Court of Appeals; *see also State v. Forrest*, 136 Ohio St.3d 134, 2013-Ohio-2409. Unless this panel finds unanimously "that no conflict exists" the en banc court must consider whether to grant the application and consider the matter. *Id.* Thus, the core issue, both for deciding whether the en banc court should consider the application and the underlying merits, is whether our decision in *Frash* conflicts with other decisions of this Court.

{¶ 3} The Supreme Court of Ohio has made apparent that conflicting decisions are those which conflict on the same legal issue or question of law. *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, ¶ 18. However, "courts of appeals have discretion to determine whether an intradistrict conflict exists." *McFadden v. Cleveland State Univ.*, 120 Ohio St.3d 54, 2008-Ohio-4914, paragraph two of the syllabus. Yet, "if the judges of a court of appeals determine that two or more decisions of the court on which they sit are in conflict, they must convene en banc to resolve the conflict." *Id.*

## III. DISCUSSION

### A. Notice of Which Particular Inmate Will be Attacked is Not Always Necessary or Always Unnecessary

{¶ 4} ODRC makes much of our statement in *Frash* that it was, "not essential that ODRC know or foresee exactly whom Groves would stab." *Frash* at ¶ 10. ODRC then asserts that our 17-page majority decision "boils down" to nothing more than the holding

No. 14AP-932

that because the assailant, Eugene Groves, ("Groves") had "an older propensity for violence" that ODRC was perpetually on constructive notice that Groves would attack. (Feb. 12, 2016 Application for en Banc Consideration, 9.) This, ODRC states, conflicts with other cases in which we have made statements such as, "the averments in the affidavit *do not permit the inference that [he] threatened to harm appellant in particular*." (Emphasis sic.) *Id.* at 8, quoting *Allen v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-619, 2015-Ohio-383, ¶ 21. In fact however, our statement that it was "not essential that ODRC know or foresee exactly whom Groves would stab" was not a legal holding about ODRC's duties to all prisoners in all cases. *Frash* at ¶ 10. It was an observation that, based on the facts of the case (which are much more complicated than the "boiled down" version ODRC now presents), identifying a specific target was not necessary.

{¶ 5} ODRC argues that this Court has created an absurd result where ODRC is in a "sued if you do, sued if you don't" situation where it must either confine people in maximum security and face suit for constitutional violations or face lawsuits for every harm any prisoner perpetrates. (Feb. 12, 2016 Application for en Banc Consideration, 4.) However, ODRC's argument is an oversimplification both of the law as it stood prior to *Frash* and of the *Frash* decision itself. That is, ODRC posits that the law always had been (prior to *Frash*) that ODRC was never liable unless they knew exactly whom an inmate would attack. Then ODRC claims that our decision in *Frash* makes ODRC liable every time something happens regardless of whether they knew whom an inmate would attack. Both positions are hyperboles of our holding.

{¶ 6} We have never held that notice of exactly who would be attacked is always a necessary prerequisite to establishing liability in cases such as these. Though ODRC cites a number of cases to try to support that proposition, none of those cases consist of holdings that knowing who would be attacked is always a prerequisite to establishing liability on the part of ODRC.

{¶ 7} For example, in *Allen*, we explained that past threats against a variety of inmates without a "claim that [the attacker] ever made good on those threats" were insufficient to infer that ODRC "had constructive notice that an assault upon [the victim] was imminent." *Allen* at ¶ 22. We then remarked, within the fact pattern of an inmate

who had made unsubstantiated threats, that the fact that ODRC "knew that [the attacker] was a violent offender who had made threats of violence toward other inmates is insufficient, *standing alone*, to establish constructive notice to [O]DRC of an imminent attack on appellant." (Emphasis added. ) *Id.*

{¶ 8} In *Watson v. Ohio Depart. of Rehab. & Corr.*, 10th Dist. No. 11AP-606, 2012-Ohio-1017, we declined to infer that the attacker was a danger to the victim and other inmates based on erratic behavior, because that "does not translate into actual or constructive notice that [the inmate] posed a risk of violence or that his attack on [the injured inmate] was forthcoming." *Id.* at ¶ 15, quoting *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-1052, 2010-Ohio-4736, ¶ 15. We additionally noted that the inmate in *Watson* had "never exhibited violent tendencies or assaultive behavior toward [the victim] *or any other inmate* during his incarceration at [the prison.] Further, while [the attacker's] actions prior to the assault were certainly bizarre, he did not threaten or act violently toward [the victim] *or any other inmate.*" (Emphasis added.) *Watson* at ¶ 19.

{¶ 9} In *Ford v. Ohio Depart. of Rehab. & Corr.*, 10th Dist. No. 05AP-357, 2006-Ohio-2531, ¶ 14, 26, ODRC notes that we remarked that "this evidence, if believed by the Court of Claims as the trier of fact, constitutes some competent credible evidence to support the Court of Claims' conclusion that ODRC lacked actual or constructive notice of the intentional attack upon plaintiff." This is in no way analogous to an intentional attack upon the plaintiff, nor does it support a contention that, in every case, notice concerning a particular victim is a necessary prerequisite to liability.

{¶ 10} Finally, in *Kordelewski v. Ohio Depart. of Rehab. & Corr.*, 10th Dist. No. 00AP-1102 (June 21, 2001), we noted that this Court's caselaw had "left open the possibility that grossly deficient security procedures might give rise to liability on the part of ODRC if the result were to permit one inmate to attack another." But we ultimately decided in that case that the attacker's "institutional record of violence was * * * [not] so out of the ordinary as to warrant measures beyond those already taken by ODRC staff" and "accordingly [that] ODRC cannot be found liable for the attack *solely* on the basis of [the attacker's] institutional history of violent incidents." (Emphasis added.) *Id.*

{¶ 11} Not only does ODRC's argument go too far in construing the cases reviewed above, it also goes too far in construing *Frash.* We did not hold in *Frash* that it is never

No. 14AP-932

(or even not generally) necessary to have notice of against whom an attack is impending. The law is that in order to be liable, ODRC must have had notice, actual or constructive, of an impending attack. *See e.g., Metcalf v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 01AP-292, 2002-Ohio-5082, ¶ 11. Whether ODRC had or did not have notice is a question that depends on all the factual circumstances involved, only one of which is whether ODRC had information about exactly whom would be attacked. As we explained in *Frash*:

> As in most negligence claims, the Estate was required to demonstrate the existence of a duty, a breach of that duty, and an injury proximately caused by the breach. *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984). ODRC owes inmates a common-law duty of reasonable care and protection from unreasonable risks. *Franks v. Ohio Dept. of Rehab. & Corr.*, 195 Ohio App.3d 114, 2011-Ohio-2048, ¶ 12 (10th Dist.). However the extent of the duty owed depends on the circumstances of the case and the foreseeability of injury. *Id.* at ¶ 13. "[T]he state is not an insurer of inmate safety and owes the duty of ordinary care only to inmates who are foreseeably at risk." *Id.,* quoting *Woods v. Ohio Dept. of Rehab. & Corr.*, 130 Ohio App.3d 742, 745 (10th Dist.1998). "Where as here, one inmate attacks another inmate, actionable negligence arises only where prison officials had adequate notice of an impending attack." *Metcalf * * *,* 2002-Ohio-5082, ¶ 11. This notice may be actual or constructive. *Id.*

(Footnote omitted.) *Frash* at ¶ 8.

{¶ 12} In *Frash*, unlike the cases ODRC cites, we viewed the other factual circumstances as sufficient to put ODRC on constructive notice notwithstanding the fact that ODRC lacked information about exactly whom Groves would assault. For example, we considered: (1) Grove's regular and repetitive record of stabbing violence against other inmates (incidents in 1984, 1988, 1994, 1996, and 1999 before being placed on level 5 security) leading up to this incident in 2010 (which was 4 years after being transferred to level 3 security in 2006); (2) the fact that these incidents were a direct result of Groves' permanent mental condition as a sufferer of paranoid schizophrenia; (3) the fact that the only guard on duty nearby was an inexperienced relief officer who had only worked at the prison for two weeks; (4) did not know the numbers to call in the event of an emergency; and (5) thought he was guarding level 2 prisoners (less dangerous) when he was really guarding level 3 prisoners (more dangerous). *Id.* at ¶ 2, 16-19.

{¶ 13}  In short, *Frash* does not change the law that, as we have observed in past cases, it would often be unfair to say that ODRC had notice of an attack when they did not know who would be attacked.  Despite ODRC's arguments that it is always necessary to show that ODRC had notice of precisely whom would be attacked, there are situations in which it would be manifestly absurd to say that ODRC had no notice of an impending attack when it did not know particularly *who* would be attacked.  For example, if an inmate stated to a guard, "I will stab to death the next person who walks into the exercise yard," and the inmate carried out his plan as the guard stood by doing nothing to interfere, it would be clear that the prison had notice that an attack was impending even though no one could predict which particular person would be attacked.  In *Frash*, we believed the facts as stated by the Court of Claims justified the conclusion that the Court of Claims was in error to have held that ODRC lacked constructive notice.  *Frash* applies the same law as all the cases ODRC now cites, it merely reaches a different result because the facts are different. *See, e.g.*, *Allen* at ¶ 22 (remarking that there was no "claim that [the attacking inmate] ever made good on [prior] threats"); *Watson* at ¶ 19 (noting that the attacking inmate "never exhibited violent tendencies or assaultive behavior toward [the victim] or any other inmate"); *Kordelewski* (noting that, because ODRC had acted appropriately, "ODRC cannot be found liable for the attack *solely* on the basis of [the attacker's] institutional history of violent incidents").  There is no conflict on a question of law here that requires en banc review.

### B.  Discretionary Immunity

{¶ 14}  ODRC argues that *Frash* should be reviewed en banc because we held that ODRC was liable concerning inmate transfer and placement decisions, with previous holdings being that such decisions are normally entitled to immunity.  However, nowhere in *Frash* did we hold as ODRC now asserts. Rather, we noted that discretionary immunity protects " ' " 'the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." ' " ' *Frash* at ¶ 21, quoting *Franks* at ¶ 14; quoting *Hughes*  at ¶ 16, quoting *Reynolds v. State Div. of Parole & Community Servs.*, 14 Ohio St.3d 68 (1984), paragraph one of the syllabus.  Then we explained that some of the Estate's claims at the trial level appeared to be more in the nature of claims about negligence by the guard

No. 14AP-932

involved, negligent training of him, and negligence in following already-established policies, which are not protected by such immunity:

> The Estate's allegations were that an inexperienced guard, Hawk, acted improperly and fearfully in reacting to a fight and that ODRC violated its policies in deciding to house an unstable and dangerous inmate like Groves in a level 2 area. While we recognize that Hawk, like all implementing employees, must exercise some degree of discretion in carrying out his duties, we have previously explained the problem in finding immunity in these situations: " 'Were we to find that discretionary immunity applies every time a state employee exercises discretion in performing his or her job, we would be vastly expanding the scope of the discretionary immunity doctrine.' " [*Miller v. Ohio Dept. of Transp.*, 10th Dist. No. 13AP-849, 2014-Ohio-3738, ¶ 32], quoting *Foster v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-503, 2013-Ohio-912, ¶ 23. Insofar as the Court of Claims applied immunity to claims that are really about negligence in adhering to policies relating to training, supervision, and inmate placement, it erred.

*Frash* at ¶ 23.

{¶ 15} We discern no basis for en banc review here.

**C. Privilege, Relevance, Burdens, and in Camera Review**

{¶ 16} We reversed the decision of the Court of Claims with regard to discovery issues because that court improperly placed the burden on the party seeking the discovery to prove relevance and the absence of privilege and because it refused to review purportedly privileged records in camera to ascertain whether they were privileged. We explained:

> The Court of Claims described its decisions to deny the Estate access and use of Groves' medical and psychiatric records as follows:

>> On three separate occasions, plaintiff filed a motion to compel Groves' psychological and medical records, and on all three motions, the court denied the motion because plaintiff did not persuade the court that the documents were not privileged, relevant, or would lead to admissible evidence establishing the necessary elements of plaintiff's cause of action.

(Oct. 1, 2014 Entry, 2.) This incorrectly shifts the defendant's burden to the plaintiff. "The burden of proof rests with the party asserting the existence of privilege." *Shaffer v. OhioHealth Corp.*, 10th Dist. No. 03AP-102, 2004-Ohio-63, ¶ 8. The Court of Claims erred in ruling against the Estate on grounds that the Estate had failed to carry a burden that was not its to carry.

* * *

Moreover, as to questions of whether material is relevant and discoverable, this court has previously stated:

> Matters are only irrelevant at the discovery stage when the information sought will not reasonably lead to the discovery of admissible evidence. [*Covington v. MetroHealth Sys.*, 150 Ohio App.3d 558, 2002-Ohio-6629, ¶ 23 (10th Dist.)]; *Dehlendorf v. Ritchey*, 10th Dist. No. 12AP-87, 2012-Ohio-5193, ¶ 20. The party resisting discovery bears the burden of demonstrating to the trial court that the requested information would *not* meet this standard. *Bennett v. Martin*, 186 Ohio App.3d 412, 2009-Ohio-6195, ¶ 44 (10th Dist.).

(Emphasis added.) *Union Sav. Bank v. Schaefer*, 10th Dist. No. 13AP-222, 2013-Ohio-5704, ¶ 46. Some of the key questions in the case were whether the injury to M.W. Frash by Groves was foreseeable and whether ODRC was negligent in protecting M.W. Frash from Groves. Evidence as to Groves' mental state leading up to the attack and Groves' psychiatric condition and propensity for violence are discoverable absent ODRC demonstrating that they should not be subject to discovery for whatever reason it posited.

We finally note that the Court of Claims declined to make an in camera inspection of the records being challenged. The Court of Claims should not have placed the burden of proving relevance and disproving privilege on the Estate (which did not have access to the records). Moreover, it should have performed an in camera inspection before ruling that the records were privileged and irrelevant without knowing for what purpose the records had been made.

*Frash* at ¶ 25, 28-29.

No. 14AP-932

{¶ 17} ODRC does not claim that these principles of law are incorrect or cite any case from this district or elsewhere that purports to conflict with these legal principles. Thus, we find no occasion for en banc review of our decision.

## IV. CONCLUSION

{¶ 18} In *Frash* we applied the law as it existed in this district to a highly unusual fact pattern to reach the result we did, but we did not state any new or conflicting rules of law. Our decision in *Frash* does not conflict with other decisions of this district on any question of law. Hence, there is no occasion for en banc review, and ODRC's application is denied.

*Application denied.*

TYACK, J., concurs.
DORRIAN, P.J., concurs in judgment only.


DORRIAN, P.J., concurring in judgment only.

{¶ 19} I concur in judgment only to deny Ohio Department of Rehabilitation and Correction's ("ODRC") application for en banc consideration.

{¶ 20} ODRC asks this court to find that the majority's conclusion at ¶ 10 of the decision, *Frash v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-932, 2016-Ohio-360, that "it is not essential that ODRC know or foresee exactly *whom* Groves would stab," conflicts with *Elam v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-714, 2010-Ohio-1225, ¶ 11-12; *Ford v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 05AP-357, 2006-Ohio-2531, ¶ 14; and *Allen v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-619, 2015-Ohio-383, ¶ 21. (Emphasis sic.) ODRC argues that *Elam*, *Ford*, and *Allen* stand for the proposition that ODRC is liable for inmate-on-inmate assault only when it had actual or constructive notice that one inmate intended to harm another specific inmate. ODRC further argues that such conclusion blends the requirement of notice with the requirement of proximate cause.

{¶ 21} As noted by ODRC, I dissented from the majority's blending of the elements of constructive notice and proximate cause. I noted that I would follow this court's precedent in *Elam*, at ¶ 10, that in proving the elements of a wrongful death suit, notice of an attack is a "separate and distinct" requirement from proximate cause. I continue to have concerns regarding the majority's discussion of negligence (notice) as being "not

No. 14AP-932

separate from the question of liability." *Frash* at ¶ 12. Nevertheless, my concerns in this regard do not necessarily lead me to the conclusion that there is an intradistrict conflict of law as ODRC has posited above.

{¶ 22} The majority states herein that "[w]e did not hold in *Frash* that it is never (or even not generally) necessary to have notice of against whom an attack is impending. * * * Whether ODRC had or did not have notice is a question that depends on all the factual circumstances involved, only one of which is whether ODRC had information about exactly whom would be attacked." (Lead opinion at ¶ 11.) The majority further states: "*Frash* applies the same law as all the cases ODRC now cites, it merely reaches a different result because the facts are different." (Lead opinion at ¶ 13.) Finally, the majority states: "In *Frash* we applied the law as it existed in this district to a highly unusual fact pattern to reach the result we did, but we did not state any new or conflicting rules of law." (Lead opinion at ¶ 18.) With this in mind, I would concur with the majority that en banc review is not proper with regard to this issue as it is posited by ODRC.

{¶ 23} ODRC also asks this court to find that the rejection of discretionary immunity in the decision conflicts with *Troutman v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 03AP-1240, 2005-Ohio-334, ¶ 9, and *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-1052, 2010-Ohio-4736, ¶ 16-19. ODRC then concedes that the "majority opinion does not explicitly overrule those cases finding that classification, housing and placement of inmates a matter of discretion—but does so in effect." (Feb. 12, 2016 ODRC Application for En Banc Consideration at 19.) Accordingly, as there is no express conflict, I would concur with the majority that en banc review is not proper with regard to this particular issue.

{¶ 24} Finally, ODRC asks this court to find that the rejection of the state's claim of a non-party's privilege in mental health records in the decision conflicts with a yet undecided case, *Evans v. Summit Behavioral Healthcare*, 10th Dist. No. 15AP-241. As the conflict presented here is hypothetical, I would concur with the majority that en banc review is not proper with regard to this particular issue.

_____