[Cite as *Hamilton v. Ohio Dept. of Rehab. & Corr.*, 2023-Ohio-3143.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| JAMES HAMILTON | Case No. 2022-00319JD |
| Plaintiff | Magistrate Gary Peterson |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff, an inmate in the custody and control of defendant, brings this action for negligence arising out of an incident where he was attacked by another inmate, Zackary Clayburn. The case proceeded to trial before the undersigned magistrate. For the reasons that follow, the magistrate recommends that judgment be entered in favor of defendant.

**Findings of Fact**

{¶2} Following a criminal conviction for endangering of a child, abuse of a corpse, and kidnapping in Butler County, plaintiff was transferred from the jail to the custody of the Ohio Department of Rehabilitation and Correction (ODRC) at Corrections Reception Center (CRC) on October 15, 2021. Exhibits A, C. Upon arrival at CRC, plaintiff completed a Reception Intake Questionnaire wherein he did not request a separation from any inmate incarcerated in an Ohio prison. Exhibit A. However, plaintiff verbally informed a corrections officer during the intake process that he should be in protective custody (PC) due to the publicity surrounding his criminal conviction. According to plaintiff, the corrections officer responded by confirming that it would be taken care of. Plaintiff did not request PC of any other employee of defendant.

{¶3} Defendant thereafter assigned plaintiff to the general population at CRC rather than PC. Plaintiff, who had previously been incarcerated in defendant's custody, attended an orientation when he was admitted to CRC where the process for submitting

kites, informal complaints, and grievances was explained. Plaintiff, however, did not write a kite, informal complaint, or grievance to any ODRC staff member challenging his placement in general population or otherwise request PC after he was placed in general population.

{¶4} On November 1, 2021, 16 days after plaintiff entered ODRC custody at CRC, plaintiff was using the telephone in a common area shortly after 6:00 p.m. The following events are captured on a video recording. Exhibit D. The dinner service had previously started at approximately 5:15 p.m., and as a result, a number of other inmates were generally milling about the common area, which was allowed at that time. Zachary Clayburn commences to heat what appears to be a cup of liquid in the microwave. Several other inmates are in the area and inmates are allowed to use the microwave during the meal service. Clayburn remains at the microwave for approximately 2 minutes and thirty seconds, pausing the microwave at one point in what appears to be an attempt to check the temperature of the liquid. After heating the liquid, Clayburn proceeds through the common area to the laundry room. After waiting in the laundry room for a brief moment, Clayburn exits the laundry room and approaches plaintiff who continues using the telephone. The officers' desk is near the telephone bank. Clayburn throws the hot liquid on plaintiff's face and upper body and immediately takes plaintiff to the ground. Clayburn continues to punch plaintiff while he is on the ground until corrections officers break up the attack. Both plaintiff and Clayburn are placed in handcuffs and removed from the area. At the time of the attack, plaintiff did not know Clayburn and had no idea why Clayburn attacked him. Exhibit B.

{¶5} Plaintiff suffered second and third degree burns to his face, head, eye, chest, shoulder, neck, and arm. Plaintiff was transported to Ohio State University (OSU) for treatment of his burns. Plaintiff remained at OSU for 21 days where his burns were scrubbed and wrapped in bandages on a daily basis. Plaintiff thereafter returned to FMC for further treatment after which he returned to CRC on November 18, 2021. Plaintiff was thereafter placed in PC. Plaintiff maintains that he has permanent scarring on his chest, arms, shoulder, and neck. Plaintiff continues to have nightmares relating to this event. Plaintiff is currently incarcerated at Toledo Correctional Institution (ToCI) in PC.

{¶6} Captain Paul Greer was the shift commander on duty and was responsible for gathering information to submit to the warden, which he compiled in an Incident Report. Exhibit B.  Greer spoke with both plaintiff and Clayburn as a part of his investigation. Greer reported that Clayburn attacked plaintiff because he believed plaintiff was a child molester.  Greer also noted that plaintiff did not know why he was attacked.  After completing the report, Greer forwarded it to law enforcement because of the possibility of criminal charges.

{¶7} Ronald Schneider was employed by the Ohio State Highway Patrol as a Trooper in 2021 with a duty assignment as a plain clothes investigator assigned to CRC and another ODRC institution.  Schneider investigated the attack involving plaintiff and subsequently completed a report.  Exhibit C.  As a part of the process of creating the report, Schneider reviews the report from the institution, reviews video if available, and interviews witnesses.  Plaintiff was interviewed by the investigator responsible for ToCI, and the interview was audio recorded.  Exhibit E.  The report was then forwarded to the Pickaway County Prosecutor's Office, and Clayburn was thereafter indicted.

{¶8} Rebecca Dowling, the warden's administrative assistant at CRC, is responsible for, among other things, the inmate grievance procedure.  Dowling explained the various ways an inmate may inform a staff member that he fears for his safety.  Such communication can occur in writing or vocally and if it is done in writing, the inmates may use kiosks located throughout the housing unit.  Nevertheless, plaintiff did not request PC in writing or write any kites regarding PC from October to November 2021.  If an inmate does request PC and is not placed in PC, the inmate may submit an informal complaint, but plaintiff did not submit an informal complaint regarding not being placed in PC.

{¶9} There is no policy to automatically place an inmate in PC if the inmate was in PC in a county jail.  Likewise, there is no policy to automatically place an inmate in PC because of the nature of the crimes for which the inmate is convicted.  Regarding a notorious criminal case, if an inmate's crime has received widespread national publicity, the inmate will be placed in PC.  Two examples of such placement due to national publicity concern an inmate convicted in murders that occurred in Pike County and an individual who was convicted of a sexual offense involving a pregnant minor. Community-based notoriety would not automatically result in PC.

**Conclusions of Law and Analysis**

{¶10} "To establish negligence, a plaintiff must show the existence of a duty, a breach of that duty, and injury resulting proximately therefrom." *Taylor v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-1156, 2012-Ohio-4792, ¶ 15. "In the context of a custodial relationship between the state and its prisoners, the state owes a common-law duty of reasonable care and protection from unreasonable risks." *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-787, 2013-Ohio-5106, ¶ 8. "The state, however, is not an insurer of inmate safety and owes the duty of ordinary care only to inmates who are foreseeably at risk." *Franks v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-442, 2013-Ohio-1519, ¶ 17. "Reasonable care is that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances, and includes the duty to exercise reasonable care to prevent an inmate from being injured by a dangerous condition about which the state knows or should know." *McElfresh v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 04AP-177, 2004-Ohio-5545, ¶ 16.

{¶11} However, while "'prison officials owe a duty of reasonable care and protection from unreasonable risks to inmates, * * * they are not the insurers of inmates' safety.'" *Morris v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 20AP-131, 2021-Ohio-3803, ¶ 31. Internal citations omitted.

{¶12} "When one inmate attacks another inmate, 'actionable negligence arises only where prison officials had adequate notice of an impending attack.'" *Skorvanek v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 17AP-222, 2018-Ohio-3870, ¶ 29, quoting *Metcalf v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 01AP-292, 2002-Ohio-5082, ¶ 11; *Watson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-606, 2012-Ohio-1017, ¶ 9 ("The law is well-settled in Ohio that ODRC is not liable for the intentional attack of one inmate by another, unless ODRC has adequate notice of an impending assault."). "'Whether ODRC had or did not have notice is a question that depends on all the factual circumstances involved.'" *Pate v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 18AP-142, 2019-Ohio-949, ¶ 12, quoting *Frash v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 14AP-932, 2016-Ohio-3134, ¶ 11.

{¶13} "Notice may be actual or constructive, the distinction being the manner in which the notice is obtained rather than the amount of information obtained." *Lucero v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 11AP-288, 2011-Ohio-6388, ¶ 18. "Whenever the trier of fact is entitled to find from competent evidence that information was personally communicated to or received by the party, the notice is actual. Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice." *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-1052, 2010-Ohio-4736, ¶ 14.

{¶14} Plaintiff failed to prove by a preponderance of the evidence that defendant had actual notice of an impending attack. The magistrate finds that plaintiff never informed defendant's staff that he feared for his safety prior to being attacked by Clayburn on November 1, 2021. Plaintiff acknowledged that at that time he did not know Clayburn and did not have any previous interactions with Clayburn. Additionally, when plaintiff was attacked, he initially did not know who had attacked him or why he had been attacked. Furthermore, there is no evidence that plaintiff authored any kite, informal complaint, or grievance indicating that he feared for his safety or that he was likely to be attacked by Clayburn or anyone else. As a result, there is no evidence that ODRC had actual notice of an impending attack on plaintiff by Clayburn.

{¶15} The magistrate further finds that plaintiff failed to prove by a preponderance of the evidence that ODRC had constructive notice of an impending attack. While a request for protective custody is a factor to consider when determining whether ODRC had constructive notice of an impending attack, protective custody status alone is insufficient to establish constructive notice of an impending attack. *Morris v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 20AP-131, 2021-Ohio-3803, ¶ 38 ("while appellant's protective custody status may be a factor for the trier of fact to consider in determining whether ODRC had constructive notice of an impending assault, we reject appellant's premise that protective custody status alone is sufficient to constitute constructive notice of an impending attack."). Furthermore, a request for PC does not then make ODRC strictly liable for any attack on the requesting inmate; rather, any liability is based on the foreseeability of the impending attack. *Morris*, at ¶ 37 ("We note that federal courts have rejected somewhat similar arguments, recognizing that claims resting

solely on an inmate's protective custody status would effectively impose strict liability for inmate assaults on other inmates irrespective of evidence as to the knowledge of prison officials."). Accordingly, the question is not did plaintiff request protective custody, but rather, is there constructive notice of an impending attack.

{¶16} Plaintiff did not present the court with any evidence that he was at an increased risk of attack because of his criminal convictions or because of any notoriety surrounding his criminal convictions. Plaintiff did not present evidence that his criminal convictions increased the likelihood of an attack. Additionally, there is no evidence that plaintiff's convictions received any widespread notoriety such that he was at an increased risk of an attack. Furthermore, plaintiff did not offer any evidence that ODRC knew or should have known that he was at an increased risk of attack because of his criminal convictions or the notoriety surrounding those convictions. Accordingly, plaintiff's request for protective custody failed to put defendant on notice that he was at risk of an increased attack.[1] Because plaintiff failed to establish that ODRC knew or should have know that he was at an increased risk of attack, ODRC did not have constructive notice of an impending attack even though plaintiff requested protective custody.[2] Accordingly, plaintiff failed to establish that defendant should have known of an impending attack on him by another inmate.

{¶17} Even though plaintiff requested PC upon his arrival at CRC, there is no evidence that plaintiff should have received PC solely based on his criminal convictions

---

[1] *See Vesey v. Owens*, N.D.Ill. No. 13 CV 7367, 2015 U.S. Dist. LEXIS 76192 (June 12 2015) (addressing argument that inmates in protective custody are always prone to danger, and holding that "a general risk of violence is not enough to establish knowledge of a substantial risk of harm" because, "[w]ere that enough, prison officials would, in effect, become strictly liable for all violence" in an institution and "that, of course, is not the law"); *Akindele v. Arce*, N.D.Ill. No. 15 C 3081, 2017 U.S. Dist. LEXIS 24791 (Feb. 22, 2017) (inmate's failure to protect claim may not rest on inmate's "protective custody status alone," but rather the evidence must show such inmate was "in genuine danger, above and beyond the dangers faced by most protective custody inmates" in order to establish a duty).

[2] *See Jackson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No.99AP-934, 2000 Ohio App.LEXIS 1671, * 9 (April 18, 2000) (finding no notice of an impending attack where the inmate only made vague statements that he needed to get off the range or be moved off the range where the inmate failed to request protective custody or express fear of an attack); *Baker v. Dept. of Rehab. & Corr.*, 28 Ohio App.3d 99, 100, 502 N.E.2d 261 (10th Dist. 1986) (the plaintiff's vague statements to guards that he needed to get off the range or be moved off the range did not provide ODRC staff with adequate notice of an impending assault where the inmate did not request protective custody or express fear of an impending assault).

and notoriety surrounding his convictions.  Plaintiff presented the court with no evidence that the criminal convictions for which he is incarcerated merit automatic placement in PC. The evidence establishes that criminal convictions, such as those for which plaintiff is incarcerated, standing alone, do not automatically result in a placement in PC. Additionally, that plaintiff may have been in PC in jail, again, does not automatically require ODRC place plaintiff in PC.  Furthermore, any notoriety surrounding plaintiff's convictions was not shown to be national or widespread, much less local notoriety, as outlined by Dowling, necessary to meriting placement in PC.  Plaintiff simply failed to present the court with evidence that his criminal convictions or notoriety regarding his convictions merited his placement in PC such that defendant had notice of an impending attack.

{¶18} Moreover, plaintiff failed to prove by a preponderance of the evidence that Clayburn attacked him because of his criminal convictions or because of any notoriety surrounding his criminal convictions.  It was reported that Clayburn attacked plaintiff because he believed plaintiff to be a child molester.  Plaintiff's criminal convictions include endangering a child, abuse of a corpse, and kidnapping but notably do not include any charge regarding child molestation.  Additionally, there is no evidence that Clayburn attacked plaintiff because of any notoriety surrounding plaintiff's criminal convictions. Accordingly, plaintiff has not shown that his criminal convictions or notoriety surrounding his convictions proximately caused the attack.  *Morris*, at ¶ 38, 48 (noting that judgment in favor of ODRC is appropriate where the is no evidence that the attack was motivated by the appellant's status as a protective custody inmate).

{¶19} Based upon the foregoing, the magistrate finds that plaintiff failed to satisfy his burden of proof to establish that defendant had notice of an impending attack and that defendant breached its duty of reasonable care.  Therefore, the magistrate recommends that judgment be entered in favor of defendant.

{¶20} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed.  A party shall not assign as error on appeal the court's adoption of any factual*

*finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*


GARY PETERSON
Magistrate

**Filed August 31, 2023**
**Sent to S.C. Reporter 9/7/23**