[Cite as *Lutz v. Ohio Dept. of Rehab. & Corr.*, 2024-Ohio-4575.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| BRYAN J. LUTZ | Case No. 2023-00294JD |
| Plaintiff | Magistrate Gary Peterson |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} This case was tried to the magistrate on the issues of liability and damages arising out of an incident where plaintiff was attacked by an incarcerated person. For the reasons that follow, it is recommended that judgment be entered in favor of defendant.

**Findings of Fact**

{¶2} On January 26, 2023, plaintiff, who at all times relevant to this claim was an incarcerated person in the custody and control of defendant at the Toledo Correctional Institution (TOCI), was assigned as a circle porter to cleaning duty. The circle is a central hub of administrative and security offices at TOCI with the center of the circle being a control room, which controls the opening and closing of doors through electronic means. The control room is elevated and has a 360-degree view of the pods through plexiglass whereby the stationed officer can see the entrance into each housing pod. The circle and the pods, which spur off from the center circle, are separated by plexiglass sliding doors. Directly in front of the entrance to the pod, and outside the control room but inside the circle, is an officer's desk that faces the entrance to the housing pod.

{¶3} Corrections Officer Adam McGlothlin overheard a conversation in the circle where something was said to plaintiff and Corrections Officer Donald Merrell, who was posted as a relief officer in the unit on January 26, 2023, and they started laughing. This occurred prior to McGlothlin reporting to his post where he is unable to hear conversations that occur outside of the control room. Berlingeri, an incarcerated person, who was in a

pod and not in the circle, also overheard the laughter and said to stop making fun of him. Plaintiff said that they were not talking about Berlingeri. McGlothlin considered the matter closed at that time as nothing further transpired, and he thereafter reported to the control room for work.  McGlothlin did not recall Berlingeri picking up a broom and threatening plaintiff or swinging it in plaintiff's direction.  Merrell recalled a conversation at the slider door to the pod between plaintiff and Berlingeri, but he did not recall the substance of the conversation.  Merrell likewise did not recall Berlingeri picking up a broom and swinging it in a threatening manner.

{¶4} About an hour or so after the above conversation occurred, McGlothlin opened the door to the pod to let plaintiff reenter the pod.  The following is captured on the video recording.  Berlingeri was seated at a table with another incarcerated person inside the pod near the entrance to the pod by the plexiglass.  Plaintiff entered the pod and immediately walked quickly toward Berlingeri.  Berlingeri stands up and plaintiff gets face to face with Berlingeri.  Both individuals gesture using their arms in an animated fashion as they point to the circle.  The conversation appears to be intense based on the body language of plaintiff and Berlingeri.  Plaintiff subsequently turns away from Berlingeri and walks to the stairwell to access the second floor.  Plaintiff glances back at Berlingeri as he walks away.  Berlingeri runs after plaintiff, grabs a broom with a hard plastic handle that is designed to break if used in an attack, and charges toward plaintiff.  Berlingeri encounters plaintiff on the stairwell as plaintiff attempts to block the blows from the broom. Berlingeri attempts to hit plaintiff at least twice.  The broom head subsequently detaches from the stick after swinging it at plaintiff at least twice. Berlingeri descends from the stairs and is met by four corrections officers, including Merrell.

{¶5} Marshal Klavinger, who was a sergeant at the time of the incident, also enters the pod.  Mike Brandel, who was a case manager at the time, likewise enters the pod. Both Klavinger and Brandel, who shared an office in the circle, heard the commotion and left their offices to see what was happening; they both entered the pod shortly after the attack on plaintiff.  By the time they arrived, the situation was resolved.

{¶6} Plaintiff subsequently received treatment for injuries to his hand.  At no point did plaintiff state to any corrections officer that he feared for his safety or inform any officers that he feared that Berlingeri would attack him.  Plaintiff also did not request

protective custody or "refuse to lock" which would have resulted in an investigation and placement away from Berlingeri.

**Conclusions of Law and Analysis**

{¶7} "To establish negligence, a plaintiff must show the existence of a duty, a breach of that duty, and injury resulting proximately therefrom." *Taylor v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-4792, ¶ 15 (10th Dist.). "In the context of a custodial relationship between the state and its prisoners, the state owes a common-law duty of reasonable care and protection from unreasonable risks." *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 2013-Ohio-5106, ¶ 8 (10th Dist.). "Reasonable care is that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances, and includes the duty to exercise reasonable care to prevent an inmate from being injured by a dangerous condition about which the state knows or should know." *McElfresh v. Ohio Dept. of Rehab. & Corr.*, 2004-Ohio-5545, ¶ 16 (10th Dist.).

{¶8} "However, while 'prison officials owe a duty of reasonable care and protection from unreasonable risks to inmates, . . . they are not the insurers of inmates' safety.'" *Morris v. Ohio Dept. of Rehab. & Corr.*, 2021-Ohio-3803 (10th Dist.), quoting *Phelps v. Ohio Dept. of Rehab. & Corr.*, 2016-Ohio-5155, ¶ 12 (10th Dist.). "When one inmate attacks another inmate, 'actionable negligence arises only where prison officials had adequate notice of an impending attack.'" *Skorvanek v. Ohio Dept. of Rehab. & Corr.*, 2018-Ohio-3870, ¶ 29 (10th Dist.), quoting *Metcalf v. Ohio Dept. of Rehab. & Corr.*, 2002-Ohio-5082, ¶ 11 (10th Dist.); *see also Watson v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-1017, ¶ 9 (10th Dist.) ("The law is well-settled in Ohio that ODRC is not liable for the intentional attack of one inmate by another, unless ODRC has adequate notice of an impending assault."). "'Whether ODRC had or did not have notice is a question that depends on all the factual circumstances involved.'" *Skorvanek* at ¶ 29, quoting *Frash v. Ohio Dept. of Rehab. & Corr.*, 2016-Ohio-3134, ¶ 11 (10th Dist.).

{¶9} "Notice may be actual or constructive, the distinction being the manner in which the notice is obtained rather than the amount of information obtained." *Lucero v. Ohio Dept. of Rehab. & Corr.*, 2011-Ohio-6388, ¶ 18 (10th Dist.). "Whenever the trier of fact is entitled to find from competent evidence that information was personally

communicated to or received by the party, the notice is actual.  Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice." *Hughes v. Ohio Dept. of Rehab. & Corr.*, 2010-Ohio-4736, ¶ 14 (10th Dist.).

{¶10} Plaintiff failed to prove his claims of negligence by a preponderance of the evidence.  There is no evidence that plaintiff expressed fear for his safety or reported to anyone that he feared that Berlingeri would attack him.  Plaintiff did not request protective custody and did not refuse to enter the housing pod.  There is no evidence that any employee of defendant knew that Berlingeri would attack plaintiff.  Accordingly, there is no evidence that defendant had actual notice of an impending attack.

{¶11} With respect to constructive notice, plaintiff failed to prove that defendant had constructive notice such that it had adequate notice of an impending attack.  There was no evidence presented of prior issues between plaintiff and Berlingeri.  Additionally, there was no evidence presented that Berlingeri had a violent history of attacking other incarcerated persons such that it was known or should have been known that he was likely to attack plaintiff.

{¶12} With respect to plaintiff's claim that Berlingeri, prior to their altercation, swung a broom in an aggressive manner, plaintiff failed to prove by a preponderance of the evidence that such an incident occurred.  None of the corrections officers or other staff members who testified recalled such an incident.  While Merrell recalled a conversation, he did not recall the substance of any such conversation.  McGlothlin recalled some laughter, but after it was explained to Berlingeri that they were not laughing at him, McGlothlin considered the matter over as nothing else happened.

{¶13} The video of the incident belies any notion that Berlingeri planned to attack plaintiff.  Berlingeri was sitting at a table when plaintiff entered the pod, and Berlingeri only stood up after plaintiff approached him.  Plaintiff aggressively confronted Berlingeri, rather than Berlingeri waiting for plaintiff to enter the pod to execute a planned attack. The broom that Berlingeri grabbed was by the entrance and away from the desk where Berlingeri sat requiring plaintiff to walk by the broom and approach Berlingeri, further indicating that Berlingeri had no intention of attacking plaintiff at that time.  Plaintiff, who claimed that he did not raise his voice during this initial encounter, is seen on the video,

visibly upset, confronting Berlingeri, and gesturing with his arms in the direction of the circle. This is all to suggest that it is unlikely that Berlingeri planned to attack plaintiff; rather, Berlingeri's attack appears to be a reaction to this encounter. *See Williams v. Southern Ohio Corr. Facility*, 67 Ohio App.3d 517, 526 (10th Dist. 1990) ("If [the attack] was a surprise to [the incarcerated person], how could it be foreseeable to prison officials?"). Finally, after confronting Berlingeri, plaintiff walks away with his back turned rather than backpedaling as would be expected if facing a threat of harm.

{¶14} Plaintiff's contention that Berlingeri threatened him by waving a broom is belied by his credibility. As previously pointed out, no other witness recalled such an event. Additionally, plaintiff testified that neither the sergeant nor case manager were present at the time; however, both are seen on the video within seconds of the attack. Plaintiff also testified that he did not raise his voice; however, given the animated nature of the conversation between Berlingeri and plaintiff, it seems highly unlikely that plaintiff was calmly conversing. Accordingly, the magistrate concludes that the corrections officers' recollection of events is more credible than plaintiff's.

{¶15} Because it does not appear that the attack was planned and there is no other credible evidence suggesting that defendant had constructive notice, the magistrate concludes that defendant had no notice, actual or constructive, of an impending attack. Thus, plaintiff's claim of negligence fails. It is therefore recommended that judgment be entered in favor of defendant.

{¶16} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
GARY PETERSON
Magistrate

**Filed August 23, 2024**
**Sent to S.C. Reporter 9/19/24**