[Cite as *Grant v. Ohio Dept. of Rehab. & Corr.*, 2026-Ohio-881.]

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| CHARLES GRANT | Case No. 2024-00127JD |
| Plaintiff | Magistrate Gary Peterson |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} This case was tried to the magistrate on the issue of liability only, arising out of an incident where plaintiff was attacked by an incarcerated person. For the reasons that follow, it is recommended that judgment be entered in favor of defendant.[1]

**Findings of Fact**

{¶2} At all times relevant, plaintiff was an inmate in defendant's custody at the Pickaway Correctional Institution (PCI). PCI is home to a medical facility known as the Frazier Health Center (FHC), which houses many inmates in need of medical care. Plaintiff became acquainted with an inmate named Mark Lowery while both were housed at PCI. At some point plaintiff believed that he was in danger of an attack by other inmates and "refused to lock," or return to his cell. At that time, plaintiff made arrangements with Lowery to hold onto his personal property while he was in segregation as a consequence of refusing to lock. Plaintiff placed his personal property items in a bag and provided them to Lowery for safekeeping while he was in segregation.

{¶3} After plaintiff returned from segregation, he was assigned to the upper level of FHC. The upper level consists of three "units," or wings, housing inmates in need of medical care. At the time of the attack, Covid-era partitions had been erected between

---

[1] Because the magistrate recommends judgment in favor of defendant, defendant's motion pursuant to Civ.R. 41(B)(2) for dismissal is DENIED as moot.

the inmate bunks. The decision to erect the Covid-era partitions was made by defendant's central office and not by anyone at PCI. The required 30-minute rounds performed by corrections officers, however, were unaffected by the partitions as the corrections officers were still required to make their rounds.

{¶4} Plaintiff subsequently requested that Lowery return his personal property items. The items were returned by another unknown inmate and were delivered to plaintiff while he was in the dayroom with inmate Kevin Siders and three other inmates who were playing cards. Some of the personal property items were returned to plaintiff, but not all of his personal property items were returned as plaintiff did not receive his coffee. After realizing that not all of his personal property items had been returned, Siders overheard plaintiff to state that he should put a "hit" on Lowery for stealing his coffee.

{¶5} At some point Lowery became aware of plaintiff's comment. On March 6, 2022, Lowery, who is wheelchair bound, and not housed in FHC upper level, gained access to FHC's upper level. Lowery was later determined to be out of place. Video surveillance captured the attack as it unfolded. The corrections officer assigned to the FHC upper level, Chad Shoemaker, was performing a required round of the unit while the attack transpired. The video shows Lowery proceed in his wheelchair to plaintiff's bed. Lowery then proceeds to stand and punch plaintiff repeatedly. Lowery then sits back down and attempts to leave FHC, but he is later apprehended.

{¶6} At no point did plaintiff ever inform any employee of defendant that he was having difficulties with Lowery or that he suspected that Lowery would cause him harm. To the contrary, plaintiff described the attack as "out of the blue," meaning a surprise to him. No employees of defendant received discipline for this event.

**Conclusions of Law and Analysis**

{¶7} "To establish negligence, a plaintiff must show the existence of a duty, a breach of that duty, and injury resulting proximately therefrom." *Taylor v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-4792, ¶ 15 (10th Dist.). "In the context of a custodial relationship between the state and its prisoners, the state owes a common-law duty of reasonable care and protection from unreasonable risks." *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 2013-Ohio-5106, ¶ 8 (10th Dist.). "Reasonable care is that degree of

caution and foresight an ordinarily prudent person would employ in similar circumstances, and includes the duty to exercise reasonable care to prevent an inmate from being injured by a dangerous condition about which the state knows or should know." *McElfresh v. Ohio Dept. of Rehab. & Corr.*, 2004-Ohio-5545, ¶ 16 (10th Dist.). "However, while 'prison officials owe a duty of reasonable care and protection from unreasonable risks to inmates, . . . they are not the insurers of inmates' safety.'" *Morris v. Ohio Dept. of Rehab. & Corr.*, 2021-Ohio-3803 ¶ 31 (10th Dist.), quoting *Phelps v. Ohio Dept. of Rehab. & Corr.*, 2016-Ohio-5155, ¶ 12 (10th Dist.).

{¶8} Plaintiff argues that this case is not about notice of an impending attack, while also advocating that the magistrate adopt a premises liability framework for analyzing this claim. (Plaintiff's closing argument, pg. 1, 8). However, the law in Ohio is clear: "When one inmate attacks another inmate, '*actionable negligence arises only where prison officials had adequate notice of an impending attack*.'" *Skorvanek v. Ohio Dept. of Rehab. & Corr.,* 2018-Ohio-3870, ¶ 29 (10th Dist.), quoting *Metcalf v. Ohio Dept. of Rehab. & Corr.*, 2002-Ohio-5082, ¶ 11 (10th Dist.) (emphasis added); *see also Watson v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-1017, ¶ 9 (10th Dist.) ("The law is well-settled in Ohio that ODRC is not liable for the intentional attack of one inmate by another, unless ODRC has adequate notice of an impending assault."); *Pate v. Ohio Dept. of Rehab. & Corr.*, 2019-Ohio-949, ¶ 12 (10th Dist.) (ODRC's liability for an assault by one inmate against another arises *only* where ODRC has adequate notice of an impending attack) (emphasis added); *Literal v. Ohio Dept. of Rehab. & Corr.*, 2016-Ohio-8536, ¶ 16 (10th Dist.) (It is well-settled that ODRC is not liable for an intentional attack of one inmate on another unless it has adequate notice of an impending attack). "'Whether ODRC had or did not have notice is a question that depends on all the factual circumstances involved.'" *Skorvanek* at ¶ 29, quoting *Frash v. Ohio Dept. of Rehab. & Corr.*, 2016-Ohio-3134, ¶ 11 (10th Dist.).

{¶9} "Notice may be actual or constructive, the distinction being the manner in which the notice is obtained rather than the amount of information obtained." *Watson*, 2012-Ohio-1017, ¶ 9 (10th Dist.). "Actual notice is notice obtained by actual communication to a party." *Barnett v. Ohio Dept. of Rehab. & Corr.*, 2010-Ohio-4737, ¶ 23 (10th Dist.). "Constructive notice is that notice which the law regards as sufficient to

give notice and is regarded as a substitute for actual notice." *Hughes v. Ohio Dept. of Rehab. & Corr.*, 2010-Ohio-4736, ¶ 14 (10th Dist.).

{¶10} Upon review of the evidence, the magistrate concludes that plaintiff failed to prove his case by a preponderance of the evidence. Plaintiff failed to establish that defendant had notice, actual or constructive, of an impending attack. At no point did plaintiff ever inform any employee of defendant that he feared that Lowery could attack him. Plaintiff was aware that if he did fear for his safety, he could request protective custody as he had previously done when he refused to lock. However, rather than fear for his safety, plaintiff trusted Lowery to hold his personal property items. When Lowery failed to return all of plaintiff's personal property items, plaintiff remarked that he should put a hit on Lowery. The magistrate has no reason to disbelieve Siders' testimony regarding that event, and the magistrate finds such testimony to be credible.

{¶11} There is no evidence in this case that Lowery and plaintiff had previous violent encounters with each other such that it could be concluded that defendant had constructive notice of an impending attack. There is no evidence in this case that Lowery had a history of attacking other inmates such that defendant could be on notice that he was going to attack plaintiff, especially considering that plaintiff believed they were on good terms at the time of the attack. There is also no evidence that attacks such as the one carried out by Lowery were a frequent occurrence at FHC. Rather, as Shoemaker credibly testified, events such as this one are virtually unheard of at FHC. Finally, plaintiff acknowledged that the attack was a surprise to him. *See Williams v. Southern Ohio Corr. Facility*, 67 Ohio App.3d 517, 526 (10th Dist. 1990) ("If [the attack] was a surprise to [the incarcerated person], how could it be foreseeable to prison officials?"). Given that the attack was a surprise to plaintiff, the magistrate cannot conclude that defendant should have known about an impending attack by Lowery on plaintiff. Accordingly, plaintiff has failed to prove by a preponderance of the evidence that defendant had notice, actual or constructive, of an impending attack on plaintiff.

{¶12} Plaintiff argues that one guard for approximately 154 inmates in FHC is inadequate and amounts to a lack of security. However, Shoemaker was present the day of the attack and a float officer was assigned to float between level one and level two of FHC. At the time of the attack, Shoemaker was performing his required round of the unit,

which is a security mechanism to ensure the safety of the inmates. Additionally, Lowery was apprehended following the attack. Plaintiff's argument concerning inadequate security staffing takes issue with defendant's allocation and location of corrections officers in FHC and implicates the doctrine of discretionary immunity. Such an argument has previously been addressed by the 10th District Court of Appeals,

> The doctrine of discretionary immunity "provides that 'the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion.'" *Hughes* at ¶ 16, quoting *Reynolds v. State*, 14 Ohio St.3d 68, 70, 14 Ohio B. 506, 471 N.E.2d 776 (1984). "[W]ith respect to penal institutions, prison administrators must be accorded deference in adopting and executing policies and procedures to maintain order." *Id*. at ¶ 17, citing *Bell v. Wolfish*, 441 U.S. 520, 547-48, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). *See also Scott v. Ohio Dept. of Rehab. & Corr*., 2013-Ohio-4383, ¶ 24, 999 N.E.2d 231. Thus, "decisions relating to the allocation and location of correctional staff concern prison security and administration and, as such, are executive functions that involve a high degree of official discretion." *Hughes* at ¶ 18.
>
> *Skorvanek*, 2018-Ohio-3870, ¶ 83 (noting that discretionary immunity applied where one corrections officer was providing security to 160 inmates).

{¶13} Furthermore, to the extent plaintiff argues that the covid-era partitions should not have been in place, it was established that the decision to erect such partitions was made at a high level by defendant's central office. Such a decision is protected by discretionary immunity as it involves a high degree of official discretion. *Id*; see also *Smith v. Ohio State University*, 2024-Ohio-5887, ¶ 1 (10th Dist.) (discretionary immunity applied to OSU's decisions in response to the Covid-19 pandemic). Regardless, plaintiff's arguments concerning Covid-era partitions and inmate-to-guard ratios do not impute

notice of an impending attack to defendant, particularly where, as here, attacks at FHC are unheard of and plaintiff was surprised by the attack.

{¶14} Additionally, plaintiff argues that defendant's corrections officers committed post-order violations. However, internal prison rules, such as post-orders "are primarily designed to guide correctional officials in prison administration rather than to confer rights on inmates." *State ex rel. Larkins v. Wilkinson*, 79 Ohio St.3d 477, 479 (1997), citing *Sandin v. Conner*, 515 U.S. 472, 481-482 (1995). "A breach of internal regulations in itself does not constitute negligence." *Moore v. Ohio Dept. of Rehab. & Corr.*, 2019-Ohio-767, ¶ 8 (10th Dist.). Additionally, no corrections officer received discipline as a result of the unexpected attack on plaintiff. Most importantly, even if a corrections officer committed a post-order violation, any such violation in this case did not put defendant on notice that Lowery was going to attack plaintiff. Shoemaker credibly testified that instances like the attack on plaintiff are unheard of at FHC.

{¶15} Finally, plaintiff argues that this case is similar to *Frash v. Ohio Dept. of Rehab. & Corr.*, 2016-Ohio-3134 (10th Dist.). The factual circumstances surrounding the attack on plaintiff, however, are materially different from those in *Frash*, and a different result is required. Here, both plaintiff and Lowery were acquainted, and in plaintiff's view, on good terms with each other prior to the attack, unlike the inmates in *Frash*. The medical unit where the attack occurred is a unit that is considered to be trouble free as it was described as unheard of to have an attack occur. Unlike the attacker in *Frash*, Lowery did not make threats of violence against plaintiff or any other inmate prior to the attack, and prior to the attack, plaintiff entrusted Lowery with his personal property. At the time of the attack, plaintiff had no idea that Lowery was going to attack him. Lowery was apprehended while attempting to flee and the corrections officer on duty, Shoemaker, was not inexperienced as was the officer in *Frash*. Unlike *Frash*, there is no evidence that Lowery suffered from paranoid schizophrenia or any other mental condition that caused violent outbursts. Additionally, while Lowery boasted about "beating up bullies" in his deposition, the attacker in *Frash* had an extensive record of violence against inmates related to his paranoid schizophrenia that is simply lacking in this case. *See Frash*, at ¶ 18. Under these circumstances, it is not reasonable to find that defendant

should have known that Lowery was going to attack plaintiff. *See Literal*, 2016-Ohio-8536, ¶ 31; *Skorvanek*, 2018-Ohio-3870, ¶ 34-35.

{¶16} Accordingly, plaintiff's claim fails.

**Conclusion**

{¶17} Based upon the foregoing, it is recommended that judgment be entered in favor of defendant.

{¶18} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
GARY PETERSON
Magistrate

**Filed February 23, 2026**
**Sent to S.C. Reporter 3/16/26**